Foley et al. versus Union de Banque et al. We have Mr. Cagney. I noticed that the gentleman in the blue jacket is open carrying a weapon. I'm sorry. So we have five minutes. You can begin whenever you're ready. All right. Thank you, your honor. I'd like to please the court, Craig Cagney of Davis Polk and Wardwell on behalf of the defendant appellant, UBAF. I'd like to reserve one minute for rebuttal, if I may. Sure. Speak up a little bit. Sure. Your honors, there's two motions before you today. UBAF's motion to stay the litigation below and the plaintiff's cross motion to dismiss. They both turn on whether or not this court has jurisdiction. Because if this court has jurisdiction over the appeal, the district court has no jurisdiction over the litigation and the only claim remaining in the case. I'll therefore focus my remarks on the jurisdictional question today. But I'd first like to start by providing a little bit of background relevant to that issue. First, UBAF is a French bank. It has no presence in the United States. It only maintains a correspondent account at a U.S. bank for the purpose of processing U.S. dollar transactions. Let me just ask you before you go to the background because time is limited. And there's a back and forth in the briefing on this. But you're citing some out of court, out of circuit precedent. But they're citing, and the district court cites, out of precedent Caribbean trading, Kensington, and the summary order in Vera, which seems to be clear that there is no jurisdiction unless there's a restraint or a direction to transfer the assets, neither of which the district court made clear in that footnote too, that it's not doing that. So how do we ignore our prior cases on this and find there's jurisdiction here? Your Honor, you don't need to ignore those prior decisions because they don't address the type of denial of execution immunity at issue here. The Fifth Circuit and the Seventh Circuit are the only courts to have addressed and published decisions, denials of post-judgment execution immunity. And as they both explained in that case, the immunity inheres in the property itself. And by denying that immunity, you're effectively allowing a suit against the sovereign property and the owners of that property. Nothing, if there is a restraint on the assets in some way, you'd clearly have the ability to appeal the case. And other than having to go through discovery, what is the prejudice to your client? Your Honor, it's not about an issue about prejudice to my client per se, Your Honor, because it's a collateral order on the denial of the execution immunity. It's a prejudice to the sovereign entities who own that property. The background here, Your Honor, is that the assets here do not belong to the plaintiff's judgment debtor. They belong to Syrian government financial institutions against whom they have no judgment. They argue that those entities are agencies or instrumentalities of Syria, and therefore liable for serious judgments under the FSIA and the Tarzan Resolution. How is this case different from Vera? I know it's a summary order, but that was post-judgment as well, right? Was Vera post-judgment as well? Vera was post-judgment, Your Honor, but there's several key distinctions in Vera. First of all, this is property located outside the United States, not in the country. Vera was a routine turnover of block property held within the United States. And secondly, Vera did not involve- What does that have to do with whether it's final or not? Why, whether it's in the United States, another state, or a foreign country? Why does that matter for purposes of whether it's a final order or not? I don't understand why that would affect- Because the order in Vera was reviewable on final judgment, because all it was was a turnover of property that could be returned. It wasn't leaving the location where it was held. By contrast, in this instance, the property, by the time of final judgment, will have to be brought into the country where it will not necessarily- As soon as there is an order restraining it, saying it has to be brought into the country, appealable, right? I would agree with Your Honor, but the court- They would agree with that. But the district court- I'm going to ask them in a minute, but I think they would agree. As soon as the judge makes a determination, the judge said, I haven't made a determination yet, right? The district court has specifically said, I haven't made a determination yet of whether that's going to happen or not, right? Well, that's not exactly correct, Your Honor. First of all, the court has already determined it cannot restrain the assets while they're outside the United States under New York law. And that's clear in that there's no exception in TRIA or otherwise that allows him to do that. But the court has also made clear that his decision to final Peterson 2 is final as to the ability to order that property to come into the United States. And he's made very clear he will not revisit that decision because we've tried multiple times. And that is a final order. And it's different than in Vera because in Vera, the property was not moving anywhere. Once the property comes into the United States, which it will necessarily have to do by the time of a final judgment, it will have lost its immunity. Now, you're right, there may eventually be a turnover order or an order recalling it to this country, but it's not clear that the issue would still be reviewable at that point. UBAF is not entitled to an automatic stay of that order. If the property has to come into the United States while the appeal is pending, it will lose that immunity and therefore, and that's why the Cohen Doctrine looks at whether it's reviewable on final judgment. That's what this court's precedents have looked at and that's what the rule requires. Sorry. Thank you, Mr. Cashman. Thank you, Your Honor. May I plead the court, Robert Weigel for the appellee, Foley? I think Your Honor is absolutely right. All that happened below was there was a denial of a motion to dismiss. Unlike all these other cases where somebody was ordered to do something, somebody was ordered to produce documents or somebody was in Vera, there was actually a turnover order issued, but it wasn't a final judgment yet. Do you agree if there was any type of restraint imposed or in order to transfer to the United States, they would have the right to appeal that, right? Injunctions are appealable and an order requiring them to bring money or bring these assets into the jurisdiction pursuant to Kohler would be an injunction and would be appealable. He is right in the sense that it doesn't automatically get stayed, but he can ask the district court for a stay or he can ask this court for a stay. So is it your position that if we were to dismiss this appeal or to not grant this application here that there would be nothing that the bank would have to do until there was a further order of the court? Is that your position? Well, they would have to participate in the litigation and they would have to, you know, Yes, they would have to produce documents, but until the judge issues They wouldn't have to bring the money into the United States. Not until the judge orders them to do that. And I mean, unless they choose to do it voluntarily, which they're not going to do. So, yes, it would have to be an order of the court and that would be in the nature of an injunction and that would be appealable at that time. What's your response to the argument that even though the district court hasn't formally done yet, there's nothing left for the district court to decide? That's where he sits, following Peterson. What's your response to that? I think the judge has decided that he is following Peterson, too, but he has not yet issued an order. We are still trying to get discovery as to what assets they actually have. Under TRIA, we are entitled as victims of terror attacks. My clients are relatives of victims of terror attacks. They're entitled to go after assets that belong to instrumentalities once they're here, if they're blocked. And UBIF moves $2 billion into the US. Other than the discovery, would you agree that it's inevitable that the judge is going to order them to transfer the assets to the United States? I'd like to think we will prevail, but I would not presume to say it's inevitable. What are the legal issues that are decided that they could now prevail on? His point is that all the legal issues have been decided, we're going to have to transfer these assets to the United States. Yes, there's going to be discovery, but it's going to happen. There's nothing else to be decided. Peterson, too, has some requirements. It was sent back down for the lower court, too. It never got there because of the way it played out, but there are some requirements. I would like to think we're going to prevail below, but I certainly cannot say it's inevitable. Thank you, Your Honors. Thank you. All right, Mr. Cagney, you have one minute in rebuttal. Thank you, Your Honor. The only discovery remaining in this case concerns the specific entities for whom UBIF holds assets and whether they're liable for plaintiff's judgments. That is all that's remaining in this case, and that's effectively a claim only against these Syrian financial institutions. The fact that this is a denial of a motion to dismiss rather than an attachment is not dispositive. In Rubin, it was also a grant of partial summary judgment for resolving the immunity defense that the court found was immediately appealable. And in fact, the reason you know this results in a suit against the sovereign is because in Rubin, Iran wound up having to intervene to assert its rights after that denial. By allowing this case to proceed, you're effectively allowing a suit against those foreign entities that they otherwise would not be subject to because of the absolute immunity. There's also prejudice to my client if the case proceeds because under French bank secrecy law, it cannot provide any of this discovery necessary for the turnover claim. It can't disclose the identities of its clients or the holdings it has for those entities. That's why this court's precedents have drawn a distinction between property located outside the United States and here. This issue merits immediate review and this court has not reached a contrary conclusion. Kensington and Caribbean concern prejudgment attached security orders that are completely different. Those orders do not subject the sovereign in any suit they could avoid because they still have to litigate the underlying suit. Regardless of whether they post security, it's a refutable on appeal because the security can be returned. And as Kensington made clear, those cases did not require those foreign servants to bring any assets into the United States. Thank you, your honor. Excuse me, and my colleague, for some reason this motion slipped through my barriers. And I did not recognize my former partner who would be here until he stood up and he looks very much like a former partner of mine. But in any event, I'm going to have to recuse myself in this case and I apologize to both of you and my colleague. Okay. Thank you, your honor. Thank you. Thank you. We'll reserve decision. Have a good day. Thank you.